Filed 12/16/21  P. v. Tholl CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDWARD JOHN THOLL,<br><br>Defendant and Appellant. | C090315<br><br>(Super. Ct. No. 15F02229) |

A jury convicted defendant Edward John Tholl of committing lewd or lascivious acts upon four boys under the age of 14, and committing lewd or lascivious acts upon one of the boys by use of force.  The trial court sentenced defendant to 70 years eight months in prison.

In a prior appeal, defendant argued, among other things, that the trial court erred in denying his postconviction motion for substitute appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  This court conditionally reversed the judgment

1

and remanded for a *Marsden* hearing. Because of that disposition, this court declined to address defendant's remaining appellate contentions as premature. On remand, the trial court held a lengthy *Marsden* hearing, denied defendant's request for substitute appointed counsel, and reinstated the judgment.

In this second appeal, defendant claims error in the *Marsden* hearing, and also reasserts the unaddressed contentions he had raised in his prior appeal that this court deemed premature. Specifically, he contends (1) the trial court erred on remand in addressing his motion for appointment of substitute counsel, (2) he should not have been required to testify prior to his expert witness, (3) the trial court committed instructional error, (4) there is insufficient evidence to support the convictions on counts twelve and fourteen, (5) the prosecutor committed misconduct by asking the defense expert questions suggesting that child sexual abuse accusers rarely lie, and (6) defendant is entitled to additional presentence credit.

We conclude (1) there was no *Marsden* error or abuse of discretion, (2) even if the defense expert should have testified prior to defendant, there was no prejudice, (3) there was no prejudicial instructional error, (4) sufficient evidence supports the convictions on counts twelve and fourteen, (5) defendant forfeited his prosecutorial misconduct claim regarding the questions to the defense expert, and (6) defendant is entitled to 904 days of actual custody credit.

We will modify the judgment and affirm the judgment as modified.

BACKGROUND

The People charged defendant with 15 counts of violating Penal Code section 288, subdivision (a) or (b)(1)[1] against four boys, S., A., T. and Z. B., defendant's stepbrother, was S. and Z.'s stepfather. A. and T. were S. and Z.'s friends.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant forced S. to put his mouth on defendant's penis for the first time when S. was six or seven years old. S. told defendant he did not know if he wanted to do that and defendant responded, "you'll start liking it, you don't know what you like, you're not old enough to know what to like." Defendant forced S. to perform oral sex on defendant until defendant ejaculated in S.'s mouth. S. described incidents of forced oral copulation by defendant when S. was eight through 16 or 17 years old.

Defendant tried to have anal sex with S. when S. was 13 years old. When S. told defendant he did not want to have anal sex, defendant responded that S. did not know what he wanted because he was too young to know and he would learn to eventually like it one day. S. testified that defendant orally copulated him a couple of times, sodomized him once, and had S. orally copulate defendant each time defendant was at S.'s house.

Defendant stroked A.'s penis for about a minute when A. was between 11 or 12 years old. A. touched defendant's penis at defendant's invitation. Defendant then asked if A. wanted to put defendant's penis in A.'s mouth to see what it tasted like. A. declined. A. moved away from S. and Z.'s neighborhood when he was about 13 years old and had no contact with S., T. and Z. thereafter.

Defendant asked T. to drop his pants and underwear and "hump" a weight bench when T. was between 10 and 11 years old. Defendant watched as T. complied. When T. was 12 or 13 years old, defendant told T. there was a Hustler magazine hidden in the bathroom and to go in the bathroom and masturbate. Defendant used a hidden camera to record T. masturbating.

Defendant introduced T. to voyeur websites that featured underage subjects. He convinced T. to go on a website called CAM4 when T. was about 16 years old to get money for performing sexual acts via web camera. T. did that. T. identified himself on two still images from such websites that were introduced at trial.

Defendant let Z. watch pornography and taught Z. how to masturbate when Z. was between 12 and 13 years old. He watched while Z. masturbated and gave Z. candy or

3

chocolate for doing that. On a few occasions, defendant recorded Z. masturbating. Defendant watched Z. masturbating on one occasion when Z. was in the top bunk and S. was asleep in the bottom bunk in their bedroom. Z. was 12 to 13 years old at the time. That type of conduct continued for a while and as Z. got older, defendant let Z. drive his truck instead of giving Z. candy.

S. first disclosed defendant's sexual abuse when S. was about 20 years old. S. said he called defendant and asked why defendant had molested him and defendant apologized, saying that S. was the only person defendant had molested. S. testified that when he called defendant again, defendant asked S. not to say anything, indicating that he would give S. $50,000 from a 401K account. S. sent defendant text and voicemail messages asking defendant about the money and stating that he would disclose the sexual abuse to his mother and the police. Defendant responded that he had asked his manager about his 401K, as he had promised, and was waiting for a response. But defendant later told S. that he had talked to a lawyer, what S. was doing was extortion and nothing had happened to S. S. ultimately reported the abuse to the police. He received use immunity in relation to his voicemail messages to defendant.

The trial court also admitted uncharged evidence involving B. under Evidence Code section 1108 (evidence of uncharged sexual offense). Defendant touched B.'s penis with his hand and had B.'s hand touch defendant's penis when B. was between 10 and 12 years old and defendant was over 18 years old. Defendant also tried to have anal sex with B. and to get B. to orally copulate him. B. said his older brother walked in and caught defendant and the two fought, but no police report was made.

Detective William Sanderson executed a search warrant on defendant's truck and seized defendant's laptop. A screenshot image of a shirtless T. with the words "xxlcock.eu" was recovered from the laptop. A deleted video the prosecutor described as that of an underage boy masturbating was also recovered from the laptop.

4

Defendant testified at trial. He said B. lied about defendant molesting him. He denied that B.'s older brother caught him fondling B. Defendant said the older brother, who had not accepted defendant's "coming out too well," got upset when he saw defendant sitting on B.'s bed talking to B. in the early morning hours.

Defendant denied the allegations of sexual abuse by S., A., T. and Z. He showed the jury how his stomach hung to his upper mid-thigh area and said the oral copulation acts S. described could not have physically happened. But he admitted his weight fluctuated over the years.

Defendant said S. called him for advice in about 2012 because S. was having marital problems. Defendant denied apologizing to S. Defendant said S. called again, demanding $50,000 and threatening to accuse defendant of molestation. Defendant denied offering S. money to keep him from reporting abuse. Defendant said S. told him it was S.'s brother Vincent's idea to ask defendant for money, and S. had friends who would say anything S. wanted if S. took them drinking. S. later left a voicemail message for defendant asking for money. That voicemail was played at trial. Defendant believed Z. and B. made up sexual abuse allegations to support S., and A. and T. did the same thing to help Z.

Defendant explained the images police retrieved from his laptop. He said in 2012, T. confessed he was performing sex shows via web cam and defendant advised T. to stop. Defendant said he found T.'s video using T.'s username, and kept the video to demonstrate how easy it was to obtain, but never got the chance to confront T. As for the deleted video found on his laptop, defendant said he did not know how the video got there and did not recall deleting the video.

The jury convicted defendant on eight counts of committing a lewd or lascivious act upon a child under the age of 14 years, with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of defendant or the child (hereafter "lewd intent") (§ 288, subd. (a) -- counts three, four and ten to fifteen) and seven counts of

5

committing a lewd or lascivious act upon a child under the age of 14 years with lewd intent and by use of force (§ 288, subd. (b)(1) -- counts one, two and five to nine). The trial court sentenced defendant to 70 years eight months in prison.

DISCUSSION

I

Defendant contends the trial court erred on remand in addressing his motion for appointment of substitute counsel. Specifically, he argues the trial court improperly (A) prevented him from presenting all of his claims, (B) rejected his assertion of ineffective assistance of counsel, and (C) found no breakdown of the attorney-client relationship.

A

We begin with defendant's assertion that the trial court improperly prevented him from presenting all of his claims. "[C]riminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel." (*Marsden, supra*, 2 Cal.3d at p. 123.) This right encompasses the right to have court-appointed counsel discharged and replaced by another attorney. (*Ibid.*) In California, the seminal case regarding the appointment of substitute counsel is *Marsden*. " 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." ' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230 (*Streeter*).)

Defendant asserts that, while his *Marsden* hearing was longer than most, the trial court did not allow him to raise all of his claims. We disagree.

The judge on remand instructed defendant to state all of the things he thought trial counsel Scott Cameron should have done but did not do or did but should not have done that caused defendant to believe Cameron rendered ineffective assistance of counsel and for defendant to be as specific as possible and not to hold anything back. The judge

6

allowed defendant to explain why he was dissatisfied with Cameron's representation, repeatedly directing him to focus on the things Cameron did or did not do. The judge then allowed Cameron to respond to defendant's grievances. And defendant had an opportunity to respond to Cameron's comments.

The judge also asked Cameron to respond to defendant's further statements and then returned to defendant, allowing him to respond to Cameron's comments and continue explaining why he believed Cameron's representation was deficient. The judge then asked Cameron to respond to specific claims by defendant. Although the judge asked to bring the hearing to a close on the third hearing date, the judge then permitted defendant to continue describing his grievances against Cameron. After asking Cameron for a response and Cameron's statement that he had already addressed a lot of defendant's claims, the judge said he was prepared to rule. However, when defendant complained he had not rebutted everything Cameron had said, the judge again allowed defendant to continue, admonishing him that he was repeating things and not to repeat claims. The judge reminded defendant twice more thereafter not to repeat claims. The judge also allowed defendant to make closing remarks. The trial court was not required to do more than it did. (See *People v. Alfaro* (2007) 41 Cal.4th 1277, 1320 (*Alfaro*).)

Although he complains that the judge on remand did not give him an opportunity to identify all of his concerns, defendant does not specify what additional complaints he had against Cameron that he wanted to raise at the hearing on remand. Defendant also claims the judge on remand had a "limited perspective on the actual trial" and did not understand "the breadth or the nuances" of his claims against Cameron. But defendant and Cameron provided the judge background facts relevant to their discussions and defendant does not state what nuances the judge missed.

B

Defendant also argues that on remand, the judge abused his discretion in finding that defendant failed to establish ineffective assistance of counsel. He urges that

7

Cameron rendered inadequate representation by failing to (1) object to the prosecutor's repeated use of defendant's mug shot and phrase "You will end up liking it" during opening and closing statements; (2) excuse Juror No. 3; and (3) investigate dishonesty and bias by Detective Sanderson.

" ' "A defendant is entitled to relief [on a *Marsden* motion] if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] "A trial court should grant a defendant's *Marsden* motion only when the defendant has made 'a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.]" (*Streeter, supra*, 54 Cal.4th at p. 230.) " 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*Ibid.*)

To establish inadequate representation, a defendant must prove that his or her (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].) If a defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.) We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*Maury,* at p. 389; *Strickland,* at p. 689.)

8

1.  Displaying defendant's purported mug shot during opening and closing
    statements

Defendant complained at the hearing on remand that Cameron failed to object when the prosecutor repeatedly displayed defendant's mug shot with the words "You will end up liking it" and "Why??" in opening and closing argument PowerPoint slides. Defendant said the prosecutor repeated the phrase "You will end up liking it" seven times in his opening statement and 11 times in his closing statement. Cameron responded that it was standard at trial to have a theme and he did not consider the prosecutor's conduct objectionable.

The prosecutor said in his opening statement that defendant told seven-year-old S. "You'll end up liking it" after defendant ejaculated in S.'s mouth. The prosecutor repeatedly used that phrase in describing what defendant did to S. He also repeated that phrase in his closing remarks to the jury and called the phrase defendant's mantra. But the prosecutor's remarks and the phrases used in the challenged opening and closing statement PowerPoint slides fairly reflected S.'s testimony about defendant's statements to S. and S.'s question to defendant many years later. " ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence . . . .' " ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 951; see *People v. Seumanu* (2015) 61 Cal.4th 1293, 1330 (*Seumanu*).) The prosecutor's use of the phrase "You'll end up liking it" were within the wide latitude permitted during argument.

We also conclude that it was not apparent that the photograph the prosecutor used in the challenged slides was a mug shot. The photograph showed a person standing against a neutral-colored background. Only the head and neck area of the person was depicted. The person appeared to be wearing a black T-shirt and not jailhouse or prison attire. There was no height chart in the background. There were no writings, numbers or other marks in the photograph that would indicate defendant was under arrest. (*People v.*

9

*Cook* (1967) 252 Cal.App.2d 25, 27-30 [describing the familiar and unmistakable format of a police mug shot as showing the subject's full face and profile, side by side, with a legend identifying the police department, a number and the subject's first and middle initials and last name].) There was no prejudice even assuming the photograph was defendant's mug shot because Detective Sanderson testified he arrested defendant in relation to this case and the prosecutor did not suggest that defendant had a prior criminal record. (See *People v. White* (1963) 221 Cal.App.2d 742, 744 [finding no prejudice in displaying the defendant's mug shot in the jury's presence where the defendant's criminal record was already properly before the jury].) Cameron did not render ineffective assistance by not objecting to the prosecutor's remarks and use of a purported mug shot of defendant.

*People v. Garcia* (2014) 229 Cal.App.4th 302, a case defendant cites, is distinguishable. The prosecutor in *Garcia* urged the jury to consider the defendant's sexual orientation in deciding whether she sexually abused a young girl. (*Id.* at pp. 304, 309.) The prosecutor argued that a booking photograph of the defendant, showing her with short hair, suggested the defendant was sexually attracted to females and was relevant to whether the defendant sexually molested the female child victim. (*Id.* at p. 310.) No such facts exist here. *People v. Vindiola* (1979) 96 Cal.App.3d 370, another case defendant cites, is distinguishable because the bottom portions of the photographs in that case were covered, indicating they might have been booking photographs. (*Id.* at pp. 383-384, fns. 3 & 4.)

2. Excusing Juror No. 3

The prosecutor asked during voir dire, "Can I see by a show of hands out of the remaining 16 people, who wants to hear me talk a lot? There it is. Juror No. 3, Ms. SWORN JUROR NO. 3. Thank you." The prosecutor ended his voir dire questioning with, "Was that enough, Ms. SWORN JUROR No. 3." Someone responded, "Ah, yeah." Defendant did not excuse Juror No. 3.

10

Defendant explained during the hearing on remand that he and Cameron initially believed Juror No. 3 would be favorable to the defense because she was obese; however, according to defendant, during voir dire Juror No. 3 coyly waved and smiled when the prosecutor asked "Who would want to hear me talk all day" and Juror No. 3 acted like she had a crush on the prosecutor. Defendant said he told Cameron, during voir dire, that Juror No. 3 appeared to have a crush on the prosecutor, Cameron answered that he thought they liked Juror No. 3 because of her size, defendant responded "We did till this," and "that was that."

Cameron did not share defendant's impression that Juror No. 3 had a crush on the prosecutor. He explained at the hearing on remand that he and defendant wanted Juror No. 3 because her stomach extended below her groin and there was a defense related to that physical attribute. Cameron said he consulted defendant during jury selection and did not have an impression that defendant was unhappy with Juror No. 3. The trial court was entitled to credit Cameron's explanation and conclude that defendant's complaint did not establish grounds for granting a *Marsden* motion. (*People v. Taylor* (2010) 48 Cal.4th 574, 600; *People v. Smith* (1993) 6 Cal.4th 684, 696.)

Defendant now contends that Juror No. 3 should have been excused also because she had a strong work relationship with law enforcement. He did not raise such a claim at the hearing on remand and we do not consider it. Defendant fails to establish ineffective assistance of counsel with regard to not excusing Juror No. 3.

3. Investigating dishonesty and bias by Detective Sanderson

Defendant claimed at the hearing on remand that Cameron was deficient in failing to investigate whether Detective Sanderson was stepbrother B.'s friend and whether the detective's investigation was biased.

On the first claim, defendant asserted that Detective Sanderson attended poker games at B.'s house. The investigator Cameron sent to B.'s house did not observe any poker game. Defendant complained that Cameron "blew [him] off" when defendant

11

explained why no poker games occurred the week the investigator surveilled B.'s house. Defendant said Cameron got upset and stated that he did not know Detective Sanderson's phone number when defendant asked Cameron to subpoena B.'s phone records to establish a connection between B. and Detective Sanderson and Cameron did not subpoena the records.

Cameron responded that he had an investigator surveil B.'s house on three occasions and there was no poker game. On defendant's suggestion, the investigator also interviewed a Mr. Yates, someone who attended B.'s poker games, and Yates did not recognize Detective Sanderson from the poker games. T., who was familiar with B.'s poker games, also said he did not know Detective Sanderson from the poker games. The investigator also interviewed B. In addition, Cameron asked Detective Sanderson at the preliminary hearing if he had any acquaintance with B. outside this case and Detective Sanderson testified he did not. Cameron was impressed with Yates's statement and Detective Sanderson's preliminary hearing testimony. Cameron said he told defendant he thought defendant was mistaken about Detective Sanderson's attendance at B.'s poker games but defendant wanted more stakeouts and Cameron explained to defendant that Cameron had to focus his investigation on the four accusers and B.

Cameron's responses indicated that he took steps to investigate defendant's claim that Detective Sanderson attended poker games at B.'s house. He also cross-examined Detective Sanderson on the subject at the preliminary hearing. The investigation and cross-examination did not support defendant's claim of a connection between Detective Sanderson and B. " '[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " (*In re Cudjo* (1999) 20 Cal.4th 673, 692.) In light of all the circumstances viewed as of the time of Cameron's decision to stop investigating

12

defendant's claim that Detective Sanderson attended B.'s poker parties, Cameron reasonably decided to focus his investigation on the allegations by S., A., T., Z. and B.

Defendant also complained at the hearing on remand that Detective Sanderson's investigation was biased. He said the detective (1) failed to interview the people in B.'s household; (2) only interviewed people he thought were potential victims; (3) had another detective sign a questionable subpoena for defendant's mother's house; (4) lied in a police report about when he got the password for defendant's laptop and seeing defendant drive away after the search of defendant's truck; (5) looked at defendant's laptop when he was not supposed to; and (6) showed B. pictures of T. found on defendant's laptop, causing B. to remember that defendant had molested him. Defendant complained that Cameron failed to do anything with the evidence of bias by Detective Sanderson.

Cameron disagreed with the tactic of discrediting Detective Sanderson because Cameron already planned to characterize all of the accusers as liars and felt he "didn't need to go there" with Detective Sanderson. Cameron said he discussed the issue with defendant. As for the other claims by defendant, Cameron said a forensic interviewer questioned S. and Z.'s brother Jacob and Detective Sanderson interviewed neighbors. Cameron believed he could not file a motion with regard to the search of defendant's mother's house because nothing was found in the search. Cameron also believed that a suppression motion based on Detective Sanderson opening defendant's laptop would not succeed. Cameron also described why Detective Sanderson showed B. photographs found on defendant's laptop.

Defendant and Cameron disagreed about whether to present a defense that Detective Sanderson was dishonest and biased. Cameron did not present such a defense. Instead, he attacked S., A., T., Z. and B.'s credibility and used Detective Sanderson's testimony to support certain defense arguments. For example, Cameron elicited testimony from Detective Sanderson that Vincent did not want to submit to a police interview because he was concerned about being arrested and it took nine and a half

13

months of effort to arrange an interview with Z. Cameron argued to the jury that Vincent's reluctance to submit to a police interview should give the jury reason to question the allegations against defendant and that Z. delayed his interview because he did not want to lie to the police.

A defendant's disagreement with the defense his or her trial counsel plans to present does not require substituting counsel. (*People v. Jackson* (2009) 45 Cal.4th 662, 688; *People v. Welch* (1999) 20 Cal.4th 701, 728.) "A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' ' . . . [C]ounsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant.' " (*Welch,* at pp. 728-729) We accord " 'great deference to [defense trial] counsel's tactical decisions.' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198; see *Streeter, supra*, 54 Cal.4th at pp. 228-229, 231; *Alfaro, supra*, 41 Cal.4th at pp. 1317-1318, 1320.) Defendant does not claim that Detective Sanderson falsified S., A., T. and Z.'s reports of molestation. Cameron's tactical choice not to pursue a defense that Detective Sanderson was dishonest or biased did not constitute ineffective assistance of counsel.

### C

Defendant further argues that the trial court abused its discretion in finding no prejudicial breakdown of the attorney-client relationship.

The record does not indicate that defendant and Cameron "had become embroiled in such an irreconcilable conflict that ineffective representation was 'likely to result.' " (*People v. Barnett* (1998) 17 Cal.4th 1044, 1092.) According to Cameron, he and defendant spent a hundred hours preparing for trial together. Defendant described his relationship with Cameron as one of mutual respect and that they had always gotten along. Although defendant and Cameron disagreed on a number of strategies and issues, the record shows the defense of attempted extortion gone wrong that was presented at the

14

trial was defendant's idea; Cameron explored ideas defendant was interested in before making a judgment not to introduce or pursue the evidence or theories defendant wanted; and Cameron consulted defendant during jury selection. It appears defendant and Cameron continued to communicate up through the hearing on remand. That Cameron did not accede to defendant's demands on certain tactical matters did not, by itself, constitute sufficient cause for substitution of counsel. (*Barnett,* at pp. 1092, 1106-1108 [rejecting claim of a breakdown of the attorney-client relationship where defendant continued to communicate and cooperate with counsel].) Defendant fails to demonstrate abuse of discretion by the judge on remand.

II

Defendant next contends he should not have been required to testify prior to his expert witness. He cites *Brooks v. Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358] (*Brooks*) and *People v. Cuccia* (2002) 97 Cal.App.4th 785 (*Cuccia*) in support.

The trial judge spoke with counsel on the first day of trial about when defendant's expert witness Dr. O'Donohue would testify because the doctor had some "time limitation." The trial court said the prosecutor indicated his evidence would take at most about three days and then defendant would present his case. The trial court advised defendant he had a right to testify or remain silent and he could make that decision at the close of the People's case.

On the fourth day of trial, the trial court announced the evening recess before noon when the prosecution's last witness completed his testimony. The trial court then discussed scheduling issues with counsel outside the presence of the jury. It confirmed that defense counsel would be ready to give his opening statement and put on the defense case the next day. The trial court reminded defendant he had a right to decide whether to testify or not. It then said, "But if you choose to testify, it will be tomorrow. Okay? Is that clear?" Instead of objecting to calling defendant before Dr. O'Donohue, defendant's trial counsel responded, "Yes, [¶] Just as a -- I don't have a full day of evidence. My

15

expert is not scheduled to testify until Tuesday[, six calendar days later] [¶] . . . [¶] So that might mean the jury would have a four-day weekend." The trial court responded that defense counsel had indicated from the start that Dr. O'Donohue would not be available until Tuesday and counsel and the court could use the time to complete jury instructions.

Unlike in *Brooks* and *Cuccia*, there was no categorical rule requiring defendant to testify before any other defense witness and no motion to delay defendant's testimony or objection from defendant. (Cf. *Brooks, supra*, 406 U.S. at pp. 605-606; *Cuccia, supra*, 97 Cal.App.4th at pp. 790-791.) There was also no threat by the trial court to deem that defendant rested his case if he did not testify first and no question in front of the jury about whether defendant still intended to testify. (Cf. *Cuccia,* at pp. 790-791.)

Defendant claims on appeal that objecting to having defendant testify before Dr. O'Donohue would have been futile and risk antagonizing the trial judge. We have reviewed the transcript for August 23, 2017, and while the trial judge emphasized that defendant would testify the next day, we see no indication that the trial court would have been hostile to an objection about having defendant testify first. In any event, even if there was error, we find no prejudice in defendant testifying before the defense expert witness. (*Cuccia, supra*, 97 Cal.App.4th at p. 791 [stating that error in requiring defendant to testify before remaining defense witnesses is reviewed under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] to see if the error was harmless beyond a reasonable doubt in light of all of the other evidence presented at the trial].) The defense heard all of the evidence against defendant before he testified. Based on the in limine motion rulings, the parties knew the child sexual abuse experts would testify only about general concepts relating to Child Sexual Abuse Accommodation Syndrome and would not opine whether sexual abuse occurred in this case. Dr. O'Donohue testified about the concepts of delay in disclosure and secrecy in child sexual abuse. He agreed with the testimony of prosecution expert Dr. Carmichael. He did not testify about whether any of the accusers in this case were sexually abused. His testimony was short, taking only nine

16

pages of the reporter's transcript. Cameron told the jury in his closing argument that the case was about the complaining witnesses' stories and not about the psychologists. Nothing in the record suggests, and defendant does not claim, that Dr. O'Donohue's testimony would have altered defendant's decision to testify or that defendant would have testified differently given Dr. O'Donohue's testimony. Rather, the record suggests that defendant would have decided to testify regardless of Dr. O'Donohue's testimony because defendant's testimony was necessary to establish certain aspects of the defense.

S. testified that defendant offered to pay him $50,000 not to report the abuse. Defendant, on the other hand, testified that S. fabricated the molestation allegation and threatened to falsely accuse defendant of molesting S. if defendant did not pay him $50,000. The attempted extortion by S. presented through defendant's testimony was central to the defense. Defendant was also keen to demonstrate to the jury that because his stomach hung over his genitals, he could not have physically forced S. to orally copulate him while standing by S.'s bunkbed as S. claimed. Cameron highlighted that part of the defense in his closing argument. Additionally, defendant's testimony was the only evidence contradicting B.'s testimony that B.'s older brother caught defendant molesting B. Defendant's testimony was also the only evidence providing an innocuous explanation for the presence of a lewd photograph of T. on defendant's laptop. Any error by the trial court in having defendant testify before Dr. O'Donohue was harmless under any standard.

### III

In addition, defendant claims the trial court committed instructional error. He argues (A) the trial court failed to sua sponte define extortion, the crime for which S. was granted immunity, and (B) that in light of the prosecutor's election of specific acts as the bases for counts ten to fifteen, the trial court committed prejudicial error in failing to instruct sua sponte with CALCRIM No. 3502 [Unanimity: When Prosecution Elects One Act Among Many] and in instructing that the parenthetical description of acts in those

17

counts was only "there to generally help differentiate the counts." We address each argument in turn.

A

Defendant asserts the trial court had a duty to define extortion because it was an uncharged crime that was highly relevant to the jury's evaluation of the charged crimes. But the cases he cites in support of his contention are distinguishable. Defendant was not charged with extortion or conspiracy to commit extortion. (Cf. *People v. Cortez* (1998) 18 Cal.4th 1223, 1238-1239.) Extortion was not an uncharged target offense that formed part of the prosecution's theory of liability against defendant. (Cf. *People v. Prettyman* (1996) 14 Cal.4th 248, 266-267.) And extortion was not an uncharged offense presented against defendant. (Cf. *People v. Jandres* (2014) 226 Cal.App.4th 340, 358.) Attempted extortion was a defense theory. A pinpoint instruction, i.e., an instruction that " ' "pinpoint[s]" the crux of a defendant's case, such as mistaken identification or alibi,' " was not required to be given sua sponte. (*People v. Ward* (2005) 36 Cal.4th 186, 214; *People v. Saille* (1991) 54 Cal.3d 1103, 1119.)

Defendant further argues the prosecutor committed misconduct in misstating the law of extortion.

In the context of discussing the defense theory that S. attempted to extort defendant, the prosecutor argued to the jury: "Now, the defendant -- and this is gonna be the whole case -- I'm being extorted, this is a setup, you heard the voicemail, he demanded this money. And yes, S. said I did. It only works if there's truth to it. You don't get extorted for something you didn't do. And we saw that in the text message chain." The prosecutor then questioned why defendant did not report the extortion attempt to police or, if defendant did not want to involve the police, to B. or B.'s wife. The prosecutor pointed out that instead of exposing S.'s extortion attempt, defendant told S. that defendant was obtaining information about a 401K account, presumably to pay S. not to file a police report.

18

To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely objection at trial on the ground raised on appeal and request that the jury be admonished to disregard the impropriety. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894 (*Covarrubias*).) " 'The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the [trial] court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial.' " (*People v. Brown* (2003) 31 Cal.4th 518, 553.) Defendant did not object to the prosecutor's remarks that he challenges on appeal nor request an admonition. His claim of prosecutorial misconduct is, therefore, forfeited. (*People v. Riggs* (2008) 44 Cal.4th 248, 298; *People v. Panah* (2005) 35 Cal.4th 395, 462 (*Panah*).)

The claim is without merit in any event. " 'In evaluating a claim of prejudicial misconduct based upon a prosecutor's comments to the jury, we decide whether there is a reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner.' " (*People v. Valdez* (2004) 32 Cal.4th 73, 132-133.) We consider the challenged comment in the context of the argument as a whole and " ' "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Covarrubias, supra*, 1 Cal.5th at p. 894.)

A threat to do something legal, such as to report a crime, constitutes extortion " 'when coupled with a demand for money.' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326; see § 519.) The threat constitutes extortion whether or not the victim actually committed the crime upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities. (*Flatley,* at p. 327.) But read in context, the prosecutor did not argue that S. did not commit extortion or attempted extortion. Rather, he urged the jury to assess defendant's reaction to S.'s demand for money. The prosecutor argued that defendant reacted as a person who

believed that S.'s accusation of molestation was true. We perceive no prosecutorial misconduct in the challenged statement.

B

Defendant further argues that in light of the prosecutor's election of specific acts as the bases for counts ten to fifteen (alleging violations of section 288, subdivision (a), lewd acts with a child under age 14), the trial court erred in failing to instruct sua sponte with CALCRIM No. 3502 [Unanimity: When Prosecution Elects One Act Among Many] and in instructing that the parenthetical description of acts in those counts was only there to help differentiate the counts.

1. The jury instructions on unanimity

The trial judge said, during the jury instruction conference, that there was some discussion about whether the CALCRIM No. 3500 or 3501 instruction was more appropriate, and it would give the CALCRIM No. 3501 instruction. CALCRIM No. 3500 is the standard unanimity instruction. It tells the jury that the People have presented evidence of more than one act to prove that the defendant committed the charged offense and in order to convict, the jury must agree that the People have proved that the defendant committed at least one of the acts and agree on which act the defendant committed. CALCRIM No. 3501 is a modified unanimity instruction. The first part of the instruction is identical to CALCRIM No. 3500. The second part of the instruction provides an alternative path to a conviction. It states that the jury may also convict if it agrees that the People have proved that the defendant committed all of the acts alleged to have occurred during the time period and that the defendant committed at least the number of offenses charged.

The trial court asked whether the parties had any objections to the jury instructions, and defendant's trial counsel said "No." Even if defendant did not forfeit his appellate claim, no prejudicial error occurred. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 555 (*Fernandez*) [addressing merits of CALCRIM No. 3501

20

instruction error claim even though there was no objection to the CALCRIM No. 3501 instruction given in the trial court].)

"In a criminal case, 'the jury must agree unanimously the defendant is guilty of a specific crime.' " (*Covarrubias, supra*, 1 Cal.5th at p. 877, italics omitted.) When one criminal act is charged but the evidence suggests the commission of more than one such criminal act, " 'either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.' " (*Id*. at pp. 877-878) For example, the failure to give a unanimity instruction was reversible error where a defendant was convicted of a single count of bribery but the evidence showed two discrete bribes. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [discussing *People v. Diedrich* (1982) 31 Cal.3d 263]; see also *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1532, 1535-1536, 1539.) But the relevant circumstances in this case are different.

2. Counts ten and eleven

Count ten alleged that defendant had A.'s hand touch defendant's penis after defendant asked A. for oral sex. Count eleven alleged that defendant stroked A.'s penis. A. testified that defendant stroked A.'s penis for about a minute. Defendant then had A. touch defendant's penis and asked if A. wanted to put defendant's penis in A.'s mouth to see what it tasted like. The CALCRIM No. 3501 instruction told the jury that the People presented more than one act to prove defendant committed the charged offenses, but that statement did not apply to counts ten and eleven because A. did not describe two discrete acts of A.'s hand touching defendant's penis or two discrete acts of defendant touching A.'s penis.

Defendant contends the trial court should have instructed with CALCRIM No. 3502 or not instructed on unanimity at all. CALCRIM No. 3502 applies when the prosecutor has elected a specific factual basis for an offense but the evidence shows multiple acts. (Bench Note to CALCRIM No. 3502 (2017) p. 1004.) For reasons we will explain, any error in the unanimity instruction given was harmless. (See *Fernandez,*

21

*supra*, 216 Cal.App.4th at pp. 557-558 [finding no error in instructing with CALCRIM No. 3501 where the victim testified about both specific and general instances of molestation].)

The trial court told the jury that count ten was based on the alleged incident in which A.'s hand touched defendant's penis after defendant asked A. for oral sex, and count eleven was based on the alleged incident in which defendant stroked A.'s penis. It instructed on the elements of a section 288, subdivision (a) violation and that the jury must consider the evidence as it applied to each count and consider each count separately. As instructed, the jury could not have returned a verdict of guilty on counts ten and eleven unless the jury agreed that defendant committed the specific count ten and eleven acts A. described at trial.

3. Count twelve

Count twelve alleged that defendant instructed 13-year-old T. to masturbate while defendant filmed him. T. testified that on three occasions defendant told T. to masturbate in the bathroom and defendant filmed T. masturbating with a hidden video camera. The jury could have convicted defendant of violating section 288, subdivision (a) based on one of the three acts, but defendant offered the same defense to each one, a denial. "The unanimity rule has been refined in cases involving sexual molestation of children and repeated identical offenses." (*Fernandez, supra*, 216 Cal.App.4th at p. 556.) Where, as here, a child sexual abuse accuser relates that multiple undifferentiated acts occurred and the defendant does not offer a different defense as to each act but rather denies all of them, the jury either believes or disbelieves the defendant and there is no reasonable likelihood that the jury could reasonably conclude that some of the accuser's testimony was true but other parts were not. (*People v. Jones* (1990) 51 Cal.3d 294, 321-322 (*Jones*); cf. *People v. Thompson* (1995) 36 Cal.App.4th 843, 851-853.) In such a case, the jury should be given a modified unanimity instruction allowing a conviction if the jury unanimously agrees on specific acts or the jury unanimously agrees that the

22

defendant committed all the acts described by the victim. (*Jones,* at pp. 316, 321; *Fernandez, supra*, 216 Cal.App.4th at pp. 556-558.) Such an instruction was given here. No error is established as to count twelve.

4. Count thirteen

Count thirteen alleged that defendant instructed T. to rub his genitals against a weight bench. T. testified that when he was between 10 and 11 years old, he asked defendant for permission to use a weight bench, defendant asked T. to drop his pants and underwear and "hump" the weight bench, and defendant watched as T. complied. There was no testimony of multiple incidents of defendant asking T. to hump a weight bench. The trial court told the jury that count thirteen was based on defendant directing T. to rub his genitals against defendant's weight bench when T. was 10 to 11 years old. For reasons we have explained, as instructed, the jury could not have returned a verdict of guilty on count thirteen unless the jury agreed that defendant committed the count thirteen act to which T. testified. Any error in instructing with CALCRIM No. 3501 in relation to count thirteen was harmless.

5. Counts fourteen and fifteen

Count fourteen alleged defendant told Z. to masturbate while defendant watched. Count fifteen alleged that defendant told Z. to masturbate in bed. Z. testified that when he was between 12 and 13 years old, defendant gave Z. pornographic DVDs and watched Z. masturbate in his bedroom. Z. testified that on one occasion when he was 12 to 13 years old and S. was asleep in the bottom bunk, defendant wanted to watch Z. masturbate so Z. did, while defendant stood by the bunkbed and Z. was in the top bunk. Z. said the conduct of defendant giving Z. pornography and candy and watching Z. masturbate "continued for a while." The trial court told the jury count fourteen was based on defendant directing Z. to masturbate in his bedroom while defendant watched and count fifteen was based on defendant telling Z. to masturbate in bed.

23

Even if the jury could have reasonably found more than two incidents of defendant watching while Z. masturbated in his bedroom, defendant did not offer evidence or argument casting doubt as to certain acts of watching Z. masturbate but not others. Instead, he denied ever watching Z. masturbate and ever asking Z. to masturbate. Because there was no reasonable possibility that the jury could have disagreed about the specific acts proved and the true issue in the case was a credibility dispute, there was no prejudicial error in giving the CALCRIM No. 3501 instruction. (*Jones, supra*, 51 Cal.3d at pp. 321-322; *Fernandez, supra*, 216 Cal.App.4th at pp. 556-558; see *People v. Napoles* (2002) 104 Cal.App.4th 108, 120-121.)

6. The trial court's description of the parentheticals

Defendant also asserts error in instructing that the parenthetical description of acts in the counts was only there to help differentiate the counts. He claims the trial court's response to jury question No. two allowed the jury to convict defendant based on incidents other than those the prosecutor had elected.

During deliberations, the jury asked whether the parenthetical descriptions in the counts were part of the actual charge or whether they were there only to generally help differentiate the counts. As an example and assuming the jury was referring to the parenthetical material in jury instruction No. 203, the written instruction stated, "Count Ten: on or about and in between April 1, 2001, and March 31, 2004, the defendant is charged with, Penal Code section 288(a), Lewd and Lascivious Acts on a Child Under 14, (had [A.'s] hand touch defendant's penis after asking for oral copulation), on [A.] DOE, to wit, 10-13 years old." The trial court told the jury, over defense counsel's objection, that the parenthetical material was there to generally help differentiate the counts.

The trial court correctly explained that the parenthetical material differentiated the section 288, subdivision (a) and (b)(1) counts. The verdict forms were consistent with the parenthetical material in jury instruction No. 203 and showed that the jury made

24

specific findings with regard to the different section 288, subdivision (a) counts. Defendant's claim lacks merit.

## IV

In addition, defendant argues there is insufficient evidence to support the convictions on counts twelve and fourteen.

## A

Regarding count fourteen, defendant claims the prosecutor elected the incident in which Z. rebuffed defendant's invitation to have oral sex as the basis for the count, and insufficient evidence supports the finding that such an act constituted lewd conduct.

We disagree with defendant's contention that the prosecutor elected an incident in which Z. rebuffed defendant's offer of oral sex as the basis for count fourteen. In his closing argument, the prosecutor said, "Victim four, [Z.], [S.'s] younger brother[,] described conduct that occurred when he was between the ages of 12 and 13. Now, [Z.] told us how it started. Remember? He talked about that Chapstick incident where the defendant said something about *I bet your penis is no bigger than a Chapstick.* So [Z.] pulled it out. That's how it started. [¶] And like the other three victims, it escalated. It escalated to the defendant bribing him, giving him candy, pornography, so the defendant could watch him masturbate. That's constructive touching. It escalated. [¶] What did [Z.] tell us also the defendant asked him? Remember? He asked him if he could perform oral sex on [Z.]. And what did [Z.] tell us? How did he respond? *I want my first time to be with a girl.* He's 12 or 13 years old. That's Count 14." (Original italics.)

Considering the surrounding circumstances, the jury would not have understood the above statements to mean that count fourteen was based on defendant's offer of oral sex. The trial court reminded the jury, before closing arguments began, which count applied to which victim and conduct. Consistent with the amended information, the trial court instructed the jury that count fourteen was based on defendant asking Z. to masturbate while defendant watched. The prosecutor's closing PowerPoint slides had the

25

following headings: "Count 13 [*sic*]: defendant has [Z.] masturbate," "Count 14 [*sic*]: defendant has [Z.] masturbate in bed." Finally, the signed verdict form indicated the jury convicted defendant on count fourteen based on the act of defendant asking Z. to masturbate while defendant watched.

B

As for count twelve, defendant contends there was insufficient evidence that T. was under 14 years old at the time of the Hustler magazine incident which was the basis for the count twelve charge.

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Count twelve alleged that defendant instructed T. to masturbate while defendant filmed him. T. testified on direct examination that when he was 13, defendant told him there was a Hustler magazine behind a trash can in the bathroom and to go in the bathroom and masturbate and defendant recorded T. masturbating in the bathroom. On cross-examination, T. said he could only estimate that he was 13 or 14 at the time of the Hustler magazine incident. On redirect, however, T. was certain he was in eighth grade when defendant had T. masturbate in the bathroom. T. said he was 12 or 13 years old in eighth grade. T.'s testimony supports the finding that T. was under 14 years old at the time of the Hustler magazine incident.

26

Defendant next argues the prosecutor committed misconduct by asking the defense expert questions suggesting that child sexual abuse accusers rarely lie.

Defendant moved in limine to exclude expert testimony about false allegation rates and the veracity of child sexual abuse accusers. The trial court ruled that there would be no testimony about statistics or rates from the prosecution and defense expert witnesses.

On direct examination, defense counsel asked Dr. O'Donohue whether a delayed disclosure and a disclosure that involved an allegation of secrecy meant that an abuse allegation was true. The prosecutor followed up on that line of questioning on cross-examination. He asked Dr. O'Donohue whether he would agree that it would be very rare for a person to intentionally lie about being molested. Defendant's trial counsel immediately objected to the question, but did not ask the trial court to admonish the jury to disregard the prosecutor's question. The trial court sustained the objection. The prosecutor then asked whether Dr. O'Donohue would agree that "roughly most of the time" when a child alleged a molestation, it happened. Defendant's trial counsel again objected without requesting a jury admonishment, and the trial court sustained the objection.

Defendant forfeited his appellate claim by not asking the trial court to admonish the jury about the prosecutor's questions. (*Covarrubias, supra*, 1 Cal.5th at p. 894; *Panah, supra*, 35 Cal.4th at p. 462.) But even if defendant had preserved his claim for review, we would conclude that no prejudice resulted and that the prosecutor's questions did not render the trial fundamentally unfair. (*People v. Crew* (2003) 31 Cal.4th 822, 839 ["It is misconduct for a prosecutor to violate a court ruling by eliciting or attempting to elicit inadmissible evidence . . . ."].) The two questions defendant complains of were brief. The trial court immediately sustained defense counsel's objections to the questions, and Dr. O'Donohue did not answer the questions. The prosecutor did not refer

27

to the concept that children do not generally make false sexual abuse allegations in his closing statement. Additionally, the trial court instructed the jury to decide what happened based only on the evidence presented at the trial and questions by the attorneys were not evidence; only the witnesses' answers were evidence. It further instructed that the jury should not assume that something was true just because one of the attorneys asked a question that suggested it was true. The trial court also told the jury that when the trial court sustained an objection to a question the jury must ignore the question. We assume the jury followed the trial court's instructions. (*Seumanu, supra*, 61 Cal.4th at p. 1349.) Those instructions render it unlikely that the prosecutor's questions prejudiced defendant. (*Ibid.*; *People v. Samayoa* (1997) 15 Cal.4th 795, 844.)

VI

Defendant also argues the trial court erred in failing to award 904 days of presentence actual custody credit. The Attorney General agrees.

It is proper for the appellate court to correct errors in the calculation of presentence credit when the issue involves no factual assessment or the exercise of discretion. (*People v. Guillen* (1994) 25 Cal.App.4th 756, 764.) Defendant was booked on May 29, 2015. He was sentenced on November 17, 2017. His total custody time was 904 days. The abstract of judgement should be corrected to reflect 904 days of actual custody credit instead of the 902 days shown. (*People v. Smith* (1989) 211 Cal.App.3d 523, 527 [concluding that the defendant was entitled to credit for all days in custody up to and including the day of sentencing].) Defendant does not claim any error in the calculation of his conduct credit.

DISPOSITION

The judgment is modified to award 904 days of actual custody credit for a total of 1,039 days of presentence credit. The judgement is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and

28

forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

                                       /S/
                                MAURO, J.

We concur:

    /S/
RAYE, P. J.

    /S/
ROBIE, J.